Robert J. Kahn, SBN 95037
Grace K. Bransen, SBN 351001
PLANTE HUGUENIN LEBOVIC KAHN LLP
3001 Lava Ridge Ct., Suite 300
Roseville, California 95661
Telephone: (916) 367-7098
Facsimile: (916) 367-7491
rkahn@phlklaw.com
gbransen@phlklaw.com

Attorneys for Plaintiff
WALTER P. MOORE AND ASSOCIATES, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| WALTER P. MOORE AND ASSOCIATES, INC., a Texas corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BEHAVIORAL HEALTH AT LB LLC, a Delaware limited liability company; CEDAR HEALTHGROUP LLC, a New Jersey limited liability company; CEDAR HOLDINGS, LLC, a New Jersey limited liability company; CEDAR HEALTH, a fictitious or nonexistent New Jersey enterprise; MWN COMMUNITY HOSPITAL, LLC, a California limited liability company also known as MWN, LLC, a California limited liability company; MARK TRESS, an individual and resident of New Jersey; CHAIM ROTTENBERG, an individual and resident of New Jersey; and FIDELITY NATIONAL TITLE COMPANY, a California corporation and stakeholder only<br><br>　　　　Defendants. | CASE NO. 2:24-cv-6428<br><br>**COMPLAINT FOR:**<br><br>(1) **Breach of Written Contract**<br>(2) **Breach of Written Contract – Third Party Beneficiary**<br>(3) **Account Stated**<br>(4) **Quantum Meruit**<br>(5) **Declaratory Relief**<br><br>**JURY TRIAL DEMANDED** |

1
COMPLAINT

Plaintiff Walter P. Moore and Associates, Inc., a Texas corporation ("**WPM**" or "**Plaintiff**"), by and through its undersigned counsel, hereby alleges its several claims against Defendants Behavioral Health At LB LLC, a Delaware limited liability company ("**BHLB**"); Cedar Healthgroup, LLC, a New Jersey limited liability company ("**HEALTHGROUP**"); Cedar Holdings, LLC, a New Jersey limited liability company ("**HOLDINGS**"); Cedar Health, a fictitious or nonexistent New Jersey enterprise ("**CH**"); MWN Community Hospital, LLC, a California limited liability company also known as MWN, LLC, a California limited liability company (collectively "**MWN**"); Mark Tress, an individual and resident of New Jersey ("**TRESS**"); Chaim Rottenberg, an individual and resident of New Jersey ("**ROTTENBERG**"); and Fidelity National Title Company, a California corporation and stakeholder only ("**FIDELITY**"), as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) in that this is a civil action, there is complete diversity of citizenship between Plaintiff, a Texas corporation, and each of the named Defendants (except nominal defendant **FIDELITY**), and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. Venue is proper in the Western District of California under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events, acts and omissions giving rise to the claims alleged herein occurred in the City of Long Beach and thus within the Western District, and further because one of the contracts sued upon provides that exclusive venue for a claim involving the performance of the contract shall be a court of competent jurisdiction where the underlying "Project" is located, which, with the Project being in Long Beach, California, is this Court.

3. This Court has jurisdiction over each defendant in that each was involved with the real property purchase and sale transaction and/or the seismic evaluation of the property, being the subjects of the contracts being sued upon and thus the controversy relates to and directly arises out of each Defendants' contacts with California.

/ / /

/ / /

# THE PARTIES

4. Plaintiff Walter P. Moore and Associates, Inc. ("**WPM**") is, and at all times herein mentioned was, a Texas corporation, with its principal place of business in Houston, Texas.

5. Plaintiff is informed and believes, and thereon alleges, that Defendant Behavioral Health at LB LLC ("**BHLB**") is, and at all times herein mentioned was, a Delaware limited liability company with its principal place of business located at 150 Airport Blvd., Lakewood, New Jersey. Plaintiff is further informed and believes, and thereon alleges, that defendant Mark Tress "**TRESS**" is the manager of **BHLB** as well as its sole member, being the only individual with decision-making authority to act and the only individual with overall control over the actions of **BHLB** in its role as the Buyer or Purchaser of the property that is the subject of the two contracts Plaintiff is suing upon herein, as hereinafter alleged.

6. Plaintiff is informed and believes, and thereon alleges, that Cedar Healthgroup LLC ("**HEALTHGROUP**") is, and at all times herein mentioned was, a New Jersey limited liability company, with its principal place of business located at 150 Airport Blvd., Lakewood, New Jersey. Plaintiff is further informed and believes, and thereon alleges, that defendant Mark Tress "**TRESS**" is the manager of **HEALTHGROUP** and may also be its sole member.

7. Plaintiff is informed and believes, and thereon alleges, that Cedar Holdings LLC ("**HOLDINGS**") is, and at all times herein mentioned was, a New Jersey limited liability company, with its principal place of business located at 150 Airport Blvd., Lakewood, New Jersey. Plaintiff is further informed and believes, and thereon alleges, that defendant Mark Tress "**TRESS**" is the manager of **HEALTHGROUP** and is its sole member.

8. Plaintiff is informed and believes, and thereon alleges, that Cedar Health ("**CH**") is, by that name alone, a fictitious and nonexistent entity whose name was used by defendant **ROTTENBERG** and Harvey Ross ("Ross"), acting as an agent or agents on behalf of a then undisclosed principal or principals, or as a potential reference to either **HEALTHGROUP** or **HOLDINGS**, and which name was, in either event, allowed to be used in that form by **WPM** in its dealings with **ROTTENBERG** and Ross when it was actually working unknowingly with one or more undisclosed principals, including but not limited to defendants **BHLB**,

1  **HEALTHGROUP**, **HOLDINGS**, and **TRESS**.  As such, when reference to **CH** has been made
2  in the transactions that are the subject of this action, Plaintiff is informed and believes, and thereon
3  alleges, that it has been used by and on behalf of persons and entities residing in the State of New
4  Jersey, or otherwise having their principal place of business in Lakewood, New Jersey and,
5  specifically, 150 Airport Blvd., in Lakewood, New Jersey.

6        9.      Plaintiff is informed and believes, and thereon alleges, that MWN Community
7  Hospital, LLC is, and at all times herein mentioned was, a California limited liability company,
8  that is also now known as MWN, LLC, a California limited liability company (collectively
9  "**MWN**"), both of whom are presently plaintiffs in Case No. 2:24-cv-00022-SK pending in the
10 Western District, of the United States District Court for the Central District of California.

11       10.     Plaintiff is informed and believes, and thereon alleges, that defendant Mark Tress
12 ("**TRESS**") is an individual and a citizen of the State of New Jersey.

13       11.     Plaintiff is informed and believes, and thereon alleges, that defendant Chaim
14 Rottenberg ("**ROTTENBERG**") is an individual and a citizen of the State of New Jersey.
15 Plaintiff is further informed and believes, and thereon alleges, that **ROTTENBERG** is, and at all
16 times herein mentioned was, the agent of fictitiously named defendant **CH**, and through it, the
17 agent of his undisclosed principals, defendants **HEALTHGROUP**, **HOLDINGS** and, ultimately,
18 **BHLB** and its alter ego, **TRESS**.

19       12.     Plaintiff is informed and believes, and thereon alleges, that defendants
20 **HEALTHGROUP**, **HOLDINGS**, **BHLB** and **TRESS** are alter egos of each other, in that there is
21 such a unity interest and ownership among and between them that the separate personalities of the
22 three limited liability companies and the individual do not exist and if the acts of each are treated
23 as those of **BHLB** alone, or any of the other entities alone, and not of or also of **TRESS**, an
24 inequitable result will or is likely to follow.

25       13.     Specifically, Plaintiff is informed and believes, and thereon alleges, that each of the
26 entities and **TRESS** use the same business address of 150 Airport Blvd., Lakewood, New Jersey,
27 that each of the entities and **TRESS** use and have the same employees, including but not limited to
28 **ROTTENBERG** and **ROSS**, and that, among other things that Plaintiff expects to discover and

1  can only discovery through discovery, there has been a commingling of funds. The commingling

2  occurred when money from an escrow account funded by **BHLB**, as part of its purchase

3  transaction with **MWN**, was used to pay **WPM** its initial retainer for the structural engineering/

4  seismic evaluation services contracted for by **ROTTENBERG**, **ROSS** and **CH**, which, as alleged

5  herein, they did as agents for their undisclosed principals, **HEALTHGROUP**, **HOLDINGS**

6  and/or **BHLB**.

7   14.   Plaintiff is informed and believes, and thereon alleges, that Fidelity National Title

8  Company ("**FIDELITY**") is a California corporation, which is designated and defined under the

9  purchase and sale agreement entered into between BHLB and MWN (referred to below as the

10  OriginalPSA), as the escrow holder for the transaction that is the subject of the OriginalPSA. As

11  such, FIDELITY is named herein solely as a stakeholder and is, therefore, merely a nominal party.

## FACTUAL ALLEGATIONS

**A.   IN DECEMBER 2022, BHLB AND MWN ENTERED INTO A PURCHASE AND SALE AGREEMENT FOR THE COMMUNITY HOSPITAL OF LONG BEACH**

15   15.   Plaintiff is informed and believes, and thereon alleges, that on or about December

16  27, 2022, **BHLB**, through **TRESS**, entered into a Purchase and Sale Agreement with **MWN**

17  involving the real property and improvements located at 1720 and 1760 Termino Avenue, and

18  4111 E. Wilton Street, in Long Beach, a complex commonly known and described as the

19  Community Hospital of Long Beach (the "Subject Property").

20   16.   The Purchase and Sale Agreement between **BHLB** and **MWN** was thereafter

21  amended several times, with one of them being for the purpose of specifically addressing and

22  making provision for, and expressly providing for the payment from the transaction's escrow

23  account for, the seismic evaluation services for which **WPM** was later contracted by others, as

24  agents of undisclosed principals, to perform. As such, the Purchase and Sale Agreement dated

25  December 27, 2022, a true and correct copy of which is attached hereto as Exhibit 1, is

26  appropriately referred to as the original Purchase and Sale Agreement and hereinafter as the

27  "**OriginalPSA.**"

28   17.   In Section 3 of the OriginalPSA, which provided for a purchase price of

1  $25,000,000.00, the parties agreed that BHLB would deposit $1,000,000 into an escrow account,

2  to be held by the Escrow Agent, a term defined to mean "Fidelity National Title, 3237 E. Guasti

3  Road, Suite 105, Ontario, California 91761, Attn: Jennifer riddle, Email:

4  Jennifer.Riddly@fnf.com."  (**OriginalPSA** at Section 1, page 2, and Section 3, subpart (i).).

5      18.    In the months following the execution of the OriginalPSA, and before **WPM** was

6  formally engaged to provide its professional services in the form of a seismic evaluation of the

7  Subject Property, or specific portions of it, **WPM**, through Dr. Balram Gupta, **MWN**, through

8  John Molina (Molina, as the CEO of **MWN**, LLC, signed the OriginalPSA on behalf of the

9  Seller), **TRESS**, using the email address of "mark@cedarholdings.net", **ROTTENBERG**, using

10  the email address "Chaim@cedarhealth.net", and, **ROSS**, among others, using the email address

11  of "Harvey@cedarhealth.net" were all in direct communication with each other regarding the

12  scope of the seismic assessment work to be done.  An example of one such group communication

13  is the email dated April 4, 2023, sent by TRESS at 10:28 AM, a true and correct copy of which is

14  attached hereto as Exhibit 2.

15      19.    On June 19, 2023, at the request of **ROSS**, ostensibly for **CH**, **WPM** submitted its

16  formal proposal for professional services, with its included Schedule T2 Terms of Agreement

17  attachment, to **ROSS**.  On the same date, **ROSS**, via email, returned contract, signed by

18  **ROTTENBERG**, ostensibly for **CH**, to **WPM**.  A true and correct copy of the signed agreement,

19  hereinafter "the **WPM Contract**" is attached hereto as Exhibit 4, with the cover email sent by

20  **ROSS** on June 19, 2023 at 2:45 PM attached hereto as Exhibit 3.

21      20.    The **WPM Contract** set the total compensation for WPM's services, due upon the

22  submission of invoices for the portion of work completed, at $198,000.00, but required an advance

23  payment of $60,000 before work on the seismic evaluation scope defined in the proposal would

24  begin.  (Exhibit 3 at pages 3 and 4.)

25      21.    In response to ROSS's request that WPM start its work immediately, WPM through

26  Dr. Gupta sent an email to ROSS on June 19, 2023, at 3:13 PM, a true and correct copy of the

27  broader email chain being attached hereto as Exhibit 5, asking that "Cedar" pay the $60,000

28  advance payment first:

> Thanks Harvey.  Finally!!!
> I'd start mobilizing the team right away.  Could you please have Cedar process the advance payment as identified in the proposal? Our W-9 is attached herewith.  Please let me know if you have any questions. Thanks.

22. Without informing Dr. Gupta of the true identity of his as yet undisclosed principal, BHLB, ROSS responded within minutes to inform Dr. Gupta that a "Request for payment asap just sent to CH."  (Exhibit 5.)

23. To clarify whether there was someone in particular to whom **WPM**'s invoices for its work should be submitted, Dr. Gupta of **WPM** put those questions to ROSS in an email chain ending on June 20, 2023, a true and correct copy of which is attached hereto as Exhibit 6, to which ROSS replied:

> Can address to me, and send via email to this address.  I review invoices pertaining to CHLB project, approve and send to *CH* for payment.  I've not heard any specific requirements for invoices, so submit as you would any other until we hear otherwise.
>
> For a physical address for your files, let's use *the New Jersey address* rather than CHLB's.  I'll locate and reply to this email with it. (*Emphasis added.*)

24. As of June 20, 2023, ROSS still did not disclose his undisclosed principal, opting instead to continue to refer to an entity he identified only as "**CH**."

25. Although Dr. Gupta on behalf of **WPM** had advised **ROSS** that **WPM** could start its work "right away," provided it first received the $60,000 advance payment called for in the **WPM Contract**, and although **ROSS** had written to Dr. Gupta on June 19, 2023, that "Request for payment asap just sent to CH," that payment was not made right away.  In fact, it was not until **BHLB** and **MWN** had amended their OriginalPSA to expressly provide for the ordering of a seismic assessment evaluation of the Subject Property, *and* for the payment of the cost of that work and resulting report from the escrow opened and funded for purchase transaction involving the Subject Property, that the advance payment was made.

26. Specifically, on July 18, 2023, BHLB and MWN entered into the Fourth Amendment To Purchase And Sale Agreement, a true and correct copy of which is attached hereto

as Exhibit 7 and hereinafter referred to as the "**FA to OriginalPSA**."

27. In the July 18, 2023, **FA to OriginalPSA**, BHLB and MWN expressly agreed in Section 6 of the **FA to OriginalPSA**, that **BHLB**, as Buyer, with **MWN**'s consent, as Seller, would have a seismic evaluation performed on the Real Property, defined as the land and improvements that are the subject of the **OriginalPSA**, referred to here as the Subject Property. (Exhibit 7 at Section 6 on page 2.)

28. In addition, in Section 8 of the **FA to OriginalPSA**, **BHLB** and **MWN** also expressly agreed that "The Seismic report costs will be drawn from existing deposit escrow." (Exhibit 7 at last sentence of Section 8 on page 2.)

29. Indeed, within two (2) days of the date of execution of the **FA to OriginialPSA**, **TRESS** emailed Dr. Gupta of **WPM** asking him to "confirm receipt of the 60k wire today for the Long Beach hospital report. Thanks." A true and correct copy of **TRESS**'s email, dated July 20, 2023, and sent at 4:28 PM, is attached hereto as Exhibit 8.

30. Then, the next day, and not having heard back from Dr. Gupta, **TRESS** sent a further email to Dr. Gupta repeating verbatim the request made in **TRESS**'s July 20, 2023, email. A true and correct copy of TRESS's July 20, 2023, email, sent at 5:17 AM, is attached hereto as Exhibit 9.

31. Later that same day, Dr. Gupta responded to **TRESS** that he would check with **WPM**'s accounting department and would get back to **TRESS**. In his July 21, 2023 email sent at 6:05 AM, **TRESS** responded by writing "Ty." A true and correct copy of the email from Dr. Gupta to **TRESS** and **TRESS**' succinct response, is attached hereto as Exhibit 10.

32. After receiving the advance payment of $60,000, Dr. Gupta and his **WPM** team moved forward with its work and on September 20, 2023, having completed their requested scope of work, sent their evaluation reports to representatives of the California Department of Health Care Access and Information ("HCAI"). HCAI is the state agency authorized to approve or disapprove the type of medical use to which a structure or structures may be put. On October 8, 2023, realizing that copies of the reports may not have also been sent to **ROSS**, Dr. Gupta forwarded via email the same reports previously provided to HCAI to **ROSS**. A true and correct

1  copy of Dr. Gupta's email to **ROSS**, dated October 8, 2023 and sent at 9:47 PM, along with only

2  the face (title) pages of the seven (7) completed reports, are attached hereto as group Exhibit 11.

3        33.      Pursuant to the terms of the **WPM Contract**, **WPM** invoiced "Cedar Health" for

4  the work it had done and was doing.  Copies of the three (3) invoices submitted by **WPM** for its

5  work, are dated 07/23/2023, 8/20/2023, and 09/24/2023, and reflect and unpaid balance due of

6  $138,000.   True and correct copies of the invoices are attached hereto as Exhibits 12, 13, and 14,

7  respectively,

8        34.      On multiple occasions, Dr. Gupta on behalf of **WPM**, and then later in-house

9  counsel for **WPM**, sought payment of its unpaid invoices from **ROSS**, and others.  At no time did

10  **ROSS**, **CH**, **HEALTHGROUP**, **HOLDINGS**, **BHLB**, **ROTTENBERG** or **TRESS** ever

11  challenge, question, or dispute the invoiced amounts, the invoices themselves, or **WPM**'s claim

12  that it was owed the $138,000 in fees pursuant to the **WPM Contract**.

13        35.      On January 2, 2024, by which time **BHLB** and **MWN** were involved in litigation

14  first in state court then in federal court in an action involving the **OriginalPSA**, as amended,

15  **TRESS** asked Dr. Gupta if he could "connect" Dr. Gupta with, as **TRESS** stated it "my atty," Dr.

16  Gupta responded by asking, in part, when **WPM** would be paid the three outstanding invoices,

17  which Dr. Gupta then listed in his email.  In response, **TRESS** did not object to or dispute the

18  amount due, but instead wrote "Will discuss with chaim."  A true and correct copy of the email

19  chain reflecting the above-noted exchanges, is attached hereto as Exhibit 15.

20        36.      As alleged above, at no time did **ROSS**, **ROTTENBERG**, **CH**,

21  **HEALTHGROUP**, **HOLDINGS**, **BHLB** or **TRESS** ever dispute or deny that $138,000 was due

22  to WPM for the seismic assessment and evaluation services it had rendered relative to the Subject

23  Property.  Unfortunately, despite the fact that these defendants never disputed nor denied that the

24  $138,000 was and is due, owing and unpaid to **WPM**, as of the date of filing the instant complaint,

25  **WPM** has not been paid.

26        37.      According to the terms of the **WPM Contract**, if payments due **WPM** are not paid

27  within thirty (30) days after receipt of invoice, **WPM** may charge interest on the unpaid amounts

28  and may charge interest at the highest legal rate or twelve percent (12%) per annum.  Under Texas

1  law, which is the law applicable to the **WPM** Contract, that rate is ten percent (10%) per annum.

2       38.     Applying ten precent (10%) simple interest to the amounts due under each of the
3  three invoices, and extending that calculation through and including July 2, 2023, the total interest
4  due as of July 2, 2023, is $10,566.  Thereafter, interest accrues from and after that date, and
5  through an including the date upon which judgment is entered herein, at the rate of $37.78 per day.

6       39.     In addition to providing for the recovery of interest, the **WPM Contract** also
7  provides at Section II(E) of Schedule T2, Terms and Conditions, that "any costs incurred by
8  WALTER P. MOORE in collecting delinquent amounts including, without limitation, reasonable
9  attorney's fees shall be reimbursed by the Client."  **WPM**, having had to engage counsel to pursue
10  this action for collection of the amounts due, owing and unpaid to **WPM**, therefore seeks an award
11  of reasonable attorney's fees and of all other costs incurred in the collection of the amount due.

12       40.     As of July 18, 2023, when **BHLB** and **MWN** entered into the **FA to OriginalPSA**,
13  both parties knew that **WPM** was the structural engineering firm slated to perform, and engaged to
14  perform, the seismic assessment work referred to in Sections 6 and 9 of the **FA to OriginalPSA**.
15  (See Exhibit 2.)  In entering into the **FA to OriginalPSA**, both parties intended that **WPM** would
16  benefit from the payment provisions in their contract, both were motivated to ensure that **WPM**
17  was paid from the **FIDELITY** escrow account, and both knew and intended that **WPM** would
18  benefit in that regard and in that manner.  For these reasons, **WPM**'s current action to enforce the
19  terms of the **OriginalPSA**, as amended, and bring its own action for **BHLB**'s breach of that
20  contract through nonpayment of the $138,000 due **WPM** from the escrowed funds held by
21  **FIDELITY**, is fully consistent with the reasonable expectations of **BHLB** and **MWN**.

22       41.     On the facts hereinabove alleged, and as supported by the documents attached
23  hereto as Exhibits 1 through 15, **WPM** brings this action for breach of contract, both directly
24  under the **WPM Contract**, and as a third party beneficiary of the **OriginalPSA**, as amended, and
25  seeks recovery of the amount due by way of additional relief alleged in the alternative, namely
26  under the remedy of account stated, quantum meruit, and declaratory relief, all as hereinafter
27  alleged.

28  / / /

10

COMPLAINT

## FIRST CAUSE OF ACTION

### Breach of WPM Contract

### (WPM v. BHLB, TRESS, ROTTENBERG, CH, HEATHGROUP and HOLDINGS)

42. **WPM** realleges and incorporates by reference herein the allegations of Paragraphs 1 through and including 42 above as though fully set forth.

43. As herein alleged, defendants **ROTTENBERG** and **CH** (to the extent the latter exists or is otherwise used by said defendants as a shorthand reference to **HEALTHGROUP** and/or **HOLDINGS**), were the agents of their undisclosed principal, being either **HEALTHGROUP**, **HOLDINGS**, **BHLB** and/or **TRESS**, as their alter ego, and are thus liable for all amounts due under the **WPM Contract**, pending a determination of the true identity of their undisclosed principal or principals.

44. The **WPM Contract**, as alleged herein, and as attached hereto as Exhibit 4, set forth the duties, rights, obligations and responsibilities of both **WPM** and **ROTTENBERG, CH**, **HEALTHGROUP**, **HOLDINGS**, **BHLP** and **TRESS**, as alleged herein.

45. **WPM** has performed all conditions, covenants, and promises that the **WPM Contract** requires **WPM** to perform, except for those that were excused by the failure to perform of the defendant agents and undisclosed principal or principals, as herein alleged.

46. **WPM** is informed and believes, and thereon alleges, that as a result of the nonpayment of the $138,000 due for the services rendered by **WPM** under the **WPM Contract**, for which demand for payment had been repeatedly made, that each of the said agents and undisclosed principal or principals has breached the express terms of the **WPM Contract**.

47. As a direct, proximate and legal result of the said acts, omissions and misconduct, in breach of the **WPM Contract**, **WPM** has suffered harm and sustained damages by way of the nonpayment of the $138,000 due **WPM**, by incurring costs and attorney's fees to date and to be further incurred up through and including the time that judgment is entered herein, all in an amount according to proof at trial.

48. **WPM** therefore seeks a judgment awarding it the $138,000 due, along with accrued interest thereon, at the rate of 10% simple interest, amounting to $11,246.04 as of July 20,

1 2024, and accruing thereafter at the rate of $37.78 per day.  **WPM** also seeks an an award of

2 reasonable attorney's fees and costs incurred in and as a result of its collection efforts.

3 WHEREFORE, Plaintiff **WPM** prays for judgment as against the agents who engaged

4 **WPM**, or the identified undisclosed principal or principles, as determined by the evidence

5 adduced in discovery, including defendants **ROTTENBERG**, **CH**, **HEALTHGROUP**,

6 **HOLDINGS**, **BHLP** and **TRESS**, as the alter ego of the entity defendants, all as hereinafter set

7 forth.

## SECOND CAUSE OF ACTION

### Breach of the OriginalPSA

**(WPM v. BHLB, MWN, TRESS and FIDELITY, as stakeholder)**

11 49. **WPM** realleges and incorporates by reference herein the allegations of Paragraphs

12 1 through and including 42 above, as though fully set forth.

13 50. On the basis of the facts alleged above, including those set forth in Paragraphs 19,

14 26, 27, 28, 29, 30, 31, 32, 41 and 42, which are also incorporated herein by this reference, **WPM**

15 is a third-party beneficiary of the **OriginalPSA**, as amended, and brings this action for breach as a

16 third-party beneficiary under the **OriginalPSA**, as amended.

17 51. **WPM** has performed all the services which the **OriginalPSA**, as amended,

18 contemplated would be performed relative to the seismic assessment and evaluation called for and

19 referenced in Section 6 of the **FA to OriginalPSA**.

20 52. **WPM** has demanded of **TRESS**, the manager and alleged alter ego of **BHLP**, and

21 thus of **BHLP**, to pay the $138,000 due **WPM** for the professional services it rendered relative to

22 and for the benefit of the Subject Property and the parties to the **OriginalPSA**, namely **BHLB** and

23 **MWN**.  By virtue of that demand, **BHLB** and **MWN** were to perform under the **OriginalPSA**, as

24 amended, by, among other things, instructing the Escrow Agent, **FIDELITY**, to pay **WPM** the

25 amount due **WPM** from the funds held by **FIDELITY** in escrow as the escrow holder.

26 53. **BHLB,** its manager and alter ego **TRESS**, and **MWN** have breached the

27 **OriginalPSA**, as amended, by failing and refusing to authorize and instruct the Escrow Agent,

28 **FIDELITY**, to pay all sums due and available within the escrow account controlled by

1 **FIDELITY**.

2 WHEREFORE, Plaintiff **WPM** prays for judgment against Defendants **BHLB** and **MWN**,
3 and against **TRESS** as the alter ego of **BHLB**, and for an order instructing **FIDELITY** to pay or
4 otherwise release the funds it holds in escrow to **WPM** in the amount of $138,000, or such amount
5 as is available in the Escrow Account, plus such amounts, if the current balance is insufficient to
6 pay the entire $138,000, that may be returned or added to the escrow account during the pendency
7 or at the conclusion of the litigation between **BHLB** and **MWN**, (being United States District
8 Court for the Central District of California, Case No. 2:24-cv-00022-SK) and for such other relief
9 as hereinafter set forth.

## THIRD CAUSE OF ACTION

### Account Stated

### (WPM v. BHLB, HEALTHGROUP, HOLDINGS, CH, ROTTENBERG and TRESS)

13 54. **WPM** realleges and incorporates by reference herein the allegations of Paragraphs
14 1 through and including 42 above, as though fully set forth.

15 55. In the alternative to **WPM**'s claims for breach of the **WPM Contract** and as a third
16 party beneficiary of the **OriginalPSA**, as amended, for breach of that contract, **WPM** also alleges
17 that a transaction between **WPM** and the defendants referenced above, involving the request for
18 and provision of structural engineering services in the form of a seismic assessment and evaluation
19 of the Subject Property, which created and gave rise to an indebtedness of said defendants, or
20 either of them, to **WPM**. The amount of that indebtedness was $138,000, exclusive of costs,
21 attorney' fees, and prejudgment interest.

22 56. **WPM** further alleges that by virtue of the request for services by said defendants,
23 or either of them, and the rendition of those services by **WPM**, which were at all times acceptable
24 to and not rejected, disputed, or criticized at any time or in any manner, by said defendants, or
25 either of them, an agreement, express or implied, arose such that **WPM** was entitled to payment of
26 the sum of $138,000 from said defendants for the services rendered and not paid for.

27 57. In conjunction with the rendition of the said services to and for the benefit of
28 defendants, and each of them, **WPM** submitted written invoices and thereby established an

account stated.

58. **WPM** is therefore entitled to payment of the principal sum of $138,000, plus such other amounts, including prejudgment interest, as may be allowed in accordance with the law.

WHEREFORE, Plaintiff **WPM** prays for judgment based upon an account stated as against defendants **ROTTENBERG**, **CH**, **HEALTHGROUP**, **HOLDINGS**, **BHLP** and **TRESS**, as the alter ego of the entity defendants, all as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### Quantum Meruit

**(WPM v. BHLB, HEALTHGROUP, HOLDINGS, CH, MWN, ROTTENBERG and TRESS)**

59. **WPM** realleges and incorporates by reference herein the allegations of Paragraphs 1 through and including 42 above, as though fully set forth.

60. In the alternative to **WPM**'s claims for breach of the **WPM Contract** and as a third party beneficiary of the **OriginalPSA**, as amended, for breach of that contract, **WPM** hereby alleges that it provided valuable professional structural engineering services, worth the sum of $138,000 or more, to or for the benefit of **BHLB**, **HEALTHGROUP**, **HOLDINGS**, **CH**, **MWN**, **ROTTENBERG** and **TRESS**, that said services were accepted by each of the said parties, or either of them, and that said services were performed in a manner and under circumstances such that each of said defendants had notice the services were being rendered and that they were being rendered to and/or for their benefit, and with the expectation by **WPM** that **WPM** would be paid for their services by the party or parties who and sought and benefited from them.

WHEREFORE, Plaintiff **WPM** prays for judgment in the alternative based upon the equitable doctrine of quantum meruit as against defendants **ROTTENBERG**, **CH**, **HEALTHGROUP**, **HOLDINGS**, **MWN**, **BHLP** and **TRESS**, as the alter ego of the entity defendants other than **MWN**, all as hereinafter set forth.

/ / /

/ / /

/ / /

## FIFTH CAUSE OF ACTION

### Declaratory Relief

**(WPM v. BHLB, HEALTHGROUP, HOLDINGS, CH, ROTTENBERG and TRESS)**

61. **WPM** realleges and incorporates by reference herein the allegations of Paragraphs 1 through and including 58 above, as though fully set forth.

62. As alleged and contended in the preceding paragraphs, **WPM** has alleged the existence of one or more agents acting on behalf of one or more undisclosed principals, as a result of which **WPM** alleges that each are liable to it subject to and pending the determination of the existence of the true undisclosed principal or principals for with the alleged agents **ROTHENBERG**, Ross and **CH**, had been acting.

63. As is further alleged and contended in the preceding paragraphs, **WPM** has set forth the contracts under which it believes it has rights to pursue claims for breach, which include the **WPM Contract** and the **OriginalPSA**, as amended.

64. As is further alleged and contended in the preceding paragraphs, **WPM** contends that the funds held by designated Escrow Agent **FIDELITY**, are available and earmarked for, and should be held for payment to **WPM**, for the services it rendered in preparing the seismic assessment and evaluations of the Subject Property, all as alleged herein.

65. WPM is informed and believes, and thereon alleges, that defendants named herein as **BHLB, HEALTHGROUP, HOLDINGS, CH, ROTTENBERG and TRESS** (and potentially also **MWN**) dispute each of **WPM**'s allegations and contentions, as noted herein.

66. Thus, an actual controversy exists between **WPM** and each of the said defendants involving the rights, liabilities, duties and obligations of each of the defendants named herein, including **FIDELITY**, as the designated stakeholder, to **WPM**.

WHEREFORE, Plaintiff **WPM** prays for judgment as against defendants **ROTTENBERG**, **CH**, **HEALTHGROUP**, **HOLDINGS**, **BHLB**, **MWN**, **TRESS** and **FIDELITY**, as stakeholder only, and for a determination of the rights, liabilities, duties and obligations of each, as follows:

### PRAYER FOR RELIEF

1. For damages for breach of the **WPM Contract** in the amount of $138,000;

2. For prejudgment interest on the amount due **WPM** under the **WPM Contract** in the maximum allowed under Texas law, and specifically the amount of $11,246.04 accrued as of July 20, 2024, plus per diem interest thereafter at the rate of $37.78 per day up to and including the day upon which judgment is entered herein;

3. For an award of attorney's fees under the WPM Contract in accordance with Texas law and in an amount according to proof;

4. For damages to **WPM** for breach as a third-party beneficiary of the **OriginalPSA**, as amended, in the amount of $138,000;

5. For such other and further award of such sums as may be allowed by law to third-party beneficiary, **WPM**, under the **OriginalPSA**, as amended, for the breach by defendants of the said contract, including but not limited to prejudgment interest, attorney's fees, and costs;

6. For the sum of $138,000 under the theories of recovery alleged in the alternative, being account stated and quantum meruit, all in accordance with applicable law;

7. For prejudgment interest at the rate of 10% per annum simple, in an amount according to proof at trial;

8. For declaratory relief as requested pursuant to application state and/or federal law;

9. For an order requiring stakeholder **FIDELITY** to hold, withhold, and then to disburse to **WPM** all of the funds now being held or later reacquired into escrow and that are due and owing and unpaid to **WPM** under and pursuant to the **OriginalPSA**, as amended;

10. For such other relief as the Court may deem just and proper.

## JURY DEMAND

**WPM** hereby respectfully demands a trial by jury in this action on all issues so triable.

Dated: July 30, 2024

PLANTE HUGUENIN LEBOVIC KAHN LLP

By: _____
Robert J. Kahn, Esq.
Attorneys for Walter P. Moore and Associates, Inc.

16
COMPLAINT